LONG ISLAND CITY, Appellant, *v.* THE LONG ISLAND RAIL-
ROAD COMPANY, Respondent.

The charter of Long Island City (chap. 461, Laws of 1871, tit. 3, chap. 1,
§ 14) gives its common council power to regulate the use of streets by
vehicles and railways, and to enforce obedience thereto by penalties,
with the reservation that it shall have no power to prohibit or control,
in any manner, the use of steam power on any railroad from any part
of Long Island to the East river ; and it is declared that such railroad
companies shall have unobstructed right to run to the East river, "but
shall furnish suitable guards or signals at the street crossings." The
common council passed an ordinance requiring railroad companies run-
ning cars drawn by steam power, within the city limits, to place flag-
men at every crossing; and for every violation of the ordinance imposed
a penalty of fifty dollars. Defendant's road was constructed and in opera-
tion before the enactment of the charter. Its road passed through the
city to the East river, crossing one of the city streets. In an action
to recover a penalty for not placing a flagman at the crossing, *held*,
that plaintiff was not entitled to recover ; that it had no control over
the defendant's road, and its common council had no power to regulate
by ordinance the duty imposed upon defendant to furnish proper guards
and signals.

(Submitted December 8, 1879 ; decided January 13, 1880.)

APPEAL from judgment of the General Term of the Supreme
Court, in the second judicial department, affirming a judgment
in favor of defendant, entered upon a decision of the court on
trial without a jury. (Reported below, 8 Hun, 58.)

This action was brought to recover a penalty for an alleged
violation of an ordinance passed by plaintiff's common council.

The facts appear sufficiently in the opinion.

*J. Ralph Burnett*, for appellant. The power to regulate
the use of streets, highways, roads and public places, by foot
passengers, vehicles and railways, is a police regulation
necessary for the public safety, and forms a vital part of the
internal polity of cities. (Tit. 3, chap. 1, § 14, sub. 5, Laws
of 1871, chap. 461; 2 Redfield, Law of Railways, 564;
*Buffalo and Niagara Falls R. R. Co.* v. *The City of Buffalo*,

5 Hill, 209; *Cammonwealth* v. *The Old Colony and Fall River Railroad Company*, 14 Gray, 93.) The special franchise conferred upon Long Island City by its charter, as to regulating "the use of streets, highways, etc., by railways," etc. (sub. 6, § 14, chap. 1, tit. 3, charter), is, so far as it extends, a grant of sovereignty, and must prevail within the city limits to the exclusion of the general State laws. (*The State* v. *Clark*, 1 Dutch, 54; Noy's Maxims, 19; *State* v. *Branin*, 3 Zab., 485; *Goddard Case*, 16 Pick., 504.) The defendant cannot claim immunity from local municipal regulations, because it is incorporated and operating under the general railroad law. (*Culbertson* v. *Southern Belle*, 1 Newb., 461; *Renny* v. *New Orleans*, 15 La. Ann., 657.) A municipal corporation is authorized to legislate on subjects, already, to some extent, regulated by general statute, and may impose new and additional penalties for acts already penal by the State law. (*City of Brooklyn* v. *Toynbee*, 31 Barb., 282; *Rogers* v. *Jones*, 1 Wend., 237; *Williams* v. *Inhabitants of Leeds*, 51 Maine, 313.)

*Edward E. Sprague*, for respondent. Section 19 of title 11 of plaintiff's charter, exempts defendant from the exercise of the power of the common council, to regulate the use of streets by railways. (*Gibbons* v. *Ogden*, 9 Wheat., 1, 196; id., 211; *Cherokee Nation* v. *State of Ga.*, 5 Peters, 1, 44.) Not only the general power of regulation, but this particular ordinance, conflicts with the provision which vests in defendant an unobstructed right to run to the East river. (*McGrath* v. *N. Y. C.*, 63 N. Y., 522; *McGovern* v. *N. Y. C.*, 67 id., 417.) The ordinance cannot be sustained from the provision of the charter that such railroad companies shall furnish suitable guards or signals at the street crossings. (*The People* v. *Albany and Vermont R. R. Co.*, 24 N. Y., 261; *The People ex rel. Green* v. *Dutchess and Columbia R. R. Co.*, 58 id., 152.) The ordinance is void for the further reason that the penalty exceeds the limitation prescribed by the charter. (*Dickenson* v. *Fletcher*, 9 L. R. [C.

P.], 1; *State* v. *Moultrieville*, Rice [S. C.], Law, 158. *A fortiori*, in the case of mere neglect or omission. (*Crepps* v. *Durden*, Cowp., 640; *Mayor of N. Y.* v. *Ordrenan*, 12 J. R., 122; *Grand Rapids* v. *Hughes*, 15 Mich., 54.)

EARL, J. The charter of Long Island City (chap. 461 of the Laws of 1871, tit. 3, chap. 1, § 14) contained the following provisions : " The common council shall have power to make, continue, modify and repeal such ordinances, regulations and resolutions as may be necessary to carry into effect any and all of the powers now vested in, or by this act conferred upon the corporation, and shall have power to enforce obedience thereto by ordaining penalties for each and every violation thereof, in such sums as it may deem expedient, not exceeding one hundred dollars. And shall have power to make such ordinances and with such penalties in the matters and for the purposes following :

\*        \*        \*        \*        \*        \*

" 5. To regulate the use of streets, highways, roads, and public places by foot-passengers, vehicles, railways." Subsequently in the charter is also found the following provision : " Nothing in this act shall be construed as granting to the mayor or common council of said city, or either of them, or to any officer of said city, power to prohibit or control in any manner the use of steam power on any railroad from any part of Long Island to the East river, and such railroad companies shall have unobstructed right to run to the East river with their locomotives and cars, but shall furnish suitable guards or signals at the street crossings, for the proper protection of the public."

On the 1st day of September, 1874, the common council of the city, claiming to act under the provisions first above given, passed the following ordinance : " § 1. Any railroad company or corporation running cars drawn by steam power within the limits of Long Island City shall station a flagman at all points where the tracks of such company or corporation cross a public highway, street, avenue, road or public place

within said city, on an even grade with such public highway, street, avenue, road or public place, whose duty it shall be to warn all persons passing over or using such public highway, street, avenue, road or public place, of the approach of trains.

"§ 2. Any railroad company or corporation violating this ordinance, or refusing or neglecting to carry out its provisions, shall be liable to a penalty of fifty dollars for each and every day it shall be violated, or they shall refuse or neglect to carry out its provisions as aforesaid."

The defendant's road was constructed before the enactment of plaintiff's charter, and was in operation upon Long Island to the East river. It passed through the city and crossed one of the streets thereof upon an even grade with the street. The defendant did not station a flagman at the crossing, and this action is brought to recover one penalty imposed by the ordinance.

We think the plaintiff was properly defeated in the courts below. The general power conferred upon the city by the first provision is limited and controled by the last provision. By the last, such railroad companies as the defendant were taken out of the control of the city and secured the unobstructed right to run their cars to the East river. It is true that they were to furnish "suitable guards or signals" at street crossings. They could do either; and what the guards or signals should be, they could determine, provided they were suitable for the purpose intended. If they omitted the duty thus imposed, they could be compelled by the courts to perform it, or they could probably be indicted for the omission. But the common council had no power to regulate this duty by ordinance.

Here there was no proof nor, so far as I can discover, any claim that the defendant had not furnished suitable "guards or signals" at the crossing; and if it had, the plaintiff certainly had no right to impose upon it the additional burden of keeping a flagman there.

Taking the two provisions together, it is clear that it was intended by the Legislature to confer upon the common

council the power to regulate the use of the streets only by street railways and other railways not running to the East river. It was doubtless deemed prudent to commit to the common council some control over such railways. But railroads upon which steam power was used, and which, by running to the East river, were the main arteries of commerce and travel, were not subjected to such control. The trains upon such roads are required to be run without interruption, with great regularity and speed. Such roads are subject to the general railroad laws of the State as to signboards and signals at street crossings, besides the particular provisions contained in this charter as to such crossings. There seems to be no necessity to subject such roads to municipal control, and it is not the general policy of the State to do so.

The judgment should be affirmed, with costs.

All concur, CHURCH, Ch. J., concurring in result.

Judgment affirmed.